DECISION
{¶ 1} Relator, Teddy Bennett, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying relator permanent total disability ("PTD") compensation, and to grant said compensation. *Page 2 
 {¶ 2} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate found that there was some evidence in the record to support the commission's determination that relator was capable of performing sustained remunerative employment at a sedentary level. The magistrate also found that the commission did not abuse its discretion when it determined that relator's failure to explore or participate in vocational rehabilitation was a negative factor in assessing relevant nonmedical factors pursuant to State ex rel.Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Therefore, the magistrate has recommended that we deny relator's request for a writ of mandamus.
 {¶ 3} Relator has filed objections to the magistrate's decision arguing that the commission abused its discretion when it denied him PTD based upon relator's failure to explore or participate in vocational rehabilitation. Relator argues that there is absolutely no medical or vocational evidence in the record to suggest that relator is a candidate for vocational rehabilitation. We disagree.
 {¶ 4} Although the evidence was conflicting, the record contains some evidence that relator could have participated in vocational rehabilitation. As noted by the magistrate, on May 3, 2005, relator's treating doctor, Dr. Mehta, requested six weeks of vocational rehabilitation for relator. Although Dr. Mehta rescinded that request the following day after speaking with relator, Dr. Mehta's initial request suggests that Dr. Mehta felt that from an objective standpoint, relator could participate in vocational rehabilitation. Moreover, in response to a January 2006 questionnaire from relator's case manager, Dr. Mehta indicated that she wanted a functional capacity evaluation ("FCE") *Page 3 
performed to determine whether relator was objectively capable of performing sustained remunerative employment. The FCE was performed in February 2006, and the physical therapist determined that relator was capable of performing at a sedentary work level. Therefore, there is some evidence supporting the commission's finding that relator could have participated in vocational rehabilitation given that he was capable of performing sustained remunerative employment at a sedentary work level. Therefore, we overrule relator's objections.
 {¶ 5} Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.
Objections overruled; writ of mandamus denied.
 SADLER, P.J., and BRYANT, J., concur. *Page 4 
 APPENDIX A MAGISTRATE'S DECISION
Rendered August 23, 2007
 IN MANDAMUS {¶ 6} Relator, Teddy Bennett, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total *Page 5 
disability ("PTD") compensation and ordering the commission to find that he is entitled to that compensation.
Findings of Fact: {¶ 7} 1. Relator has sustained three work-related injuries and those claims have been allowed for the following conditions:
 * * * [C]laim [number 98-460618] has been allowed for: LOW BACK STRAIN; HERNIATED DISC LEFT L4-L5; DEGENERATIVE DISC DISEASE AT L4-5; DEPRESSIVE DISORDER.
 Claim number 96-524881 has been allowed for: SPRAIN OF LEFT ANKLE.
 Claim number 01-864000 has been allowed for: RIGHT ANKLE SPRAIN.
 The claim from 1998 involving relator's back has been the most disabling.
 {¶ 8} 2. Relator last worked sometime in 2002.
 {¶ 9} 3. In August 2004, an independent medical examination was performed by Howard A. Pinsky, D.O. Dr. Pinsky opined that relator had not reached maximum medical improvement ("MMI") and recommended additional surgery based upon relator's most recent MRI and neurodiagnostic findings as well as his continued clinical symptoms. Dr. Pinsky also opined that, at that time, relator was not a candidate for vocational rehabilitation.
 {¶ 10} 4. Relator had the recommended surgery in October 2004.
 {¶ 11} 5. On May 3, 2005, six-weeks of vocational rehabilitation was requested.
 {¶ 12} 6. The request for vocational rehabilitation was withdrawn on May 5, 2005. A letter from relator's case manager, dated May 5, 2005, explained as follows: *Page 6 
 On May 3, 2005, Dr. Mehta requested Vocational Rehabilitation. After further review and discussion with your doctor, this request for medical services is being withdrawn for the following reason(s): In phone discussion with you on May 4, 2005 you indicated that you did not feel physically capable to participate in Vocational Rehabilitation activities to prepare you to return to work.
 {¶ 13} 7. Relator was examined by Lynn M. Mikolich, M.D. In her July 2005 report, Dr. Mikolich indicated that relator believed that physical therapy increased his symptoms, that relator does not perform any home exercises, and that although relator has a pool at home he does not like the water and does not use it for aquatic exercises. Dr. Mikolich also indicated that relator stated that he has constant pain on a level of three out of ten. Dr. Mikolich opined that relator had reached MMI, that he was not likely to be a candidate for more surgery, and that he could not return to his former position of employment. Dr. Mikolich indicated that relator could sit, stand and walk for one hour at a time and for two hours each during the course of an eight-hour work-day; relator could occasionally lift or carry up to six pounds; could occasionally reach; but could never bend, squat, crawl, or climb.
 {¶ 14} 8. Relator filed his application for PTD compensation in December 2005. At the time, relator was 46 years old, had completed the ninth grade in 1978; indicated that he could read, write, and perform basic math, but not well; identified his prior work history as a laborer and a tow motor operator; and further indicated that he had filed for Social Security Disability Benefits. Relator did not indicate whether or not he was receiving those benefits.
 {¶ 15} 9. In January 2006, relator's case manager addressed a questionnaire to relator's treating physician, Bina Mehta, M.D. The case manager inquired whether relator *Page 7 
had a return-to-work goal, whether Dr. Mehta anticipated he would be able to return to work, and asked what factors, other than the allowed conditions, affected his ability to return to work. The questionnaire also addressed the May 2005 request for vocational rehabilitation which had been withdrawn.
 {¶ 16} 10. In response to the questionnaire, Dr. Mehta indicated that relator did not have any return-to-work goals. Further, Dr. Mehta indicated that she wanted a functional capacity evaluation ("FCE") performed to see whether relator was objectively capable of sustained remunerative employment.
 {¶ 17} 11. Physical therapist Dean Sarris addressed a letter to Dr. Mehta in February 2006. Mr. Sarris performed the FCE as had been requested by Dr. Mehta. Ultimately, in conclusion, Mr. Sarris stated that relator views himself of being capable of less than sedentary work. However, objectively, Mr. Sarris concluded that relator could perform at a sedentary level.
 {¶ 18} 12. Despite the results of the FCE, Dr. Mehta addressed a letter to relator's attorney stating:
 Due to his ongoing pain, as well as his limited education, within a reasonable degree of medical certainty, I feel he is permanently and totally disabled from any and all types of gainful employment.
 {¶ 19} 13. The commission referred relator to Michael A. Murphy, Ph.D., for a psychological evaluation. Ultimately, Dr. Murphy opined that relator's allowed psychological condition had reached MMI; assessed a 16 percent whole person impairment; stated that relator's depression is chronic and of mild severity; and that his allowed psychological conditions pose no limitations on his ability to return to work. *Page 8 
 {¶ 20} 14. An independent medical evaluation was performed by Kirby J. Flanagan, M.D. After providing his findings on examination, Dr. Flanagan opined that relator's allowed physical conditions had reached MMI, and he assessed a 13 percent whole person impairment for his 1998 claim. Dr. Flanagan further opined that relator had zero percent impairment for his other two claims. Dr. Flanagan opined that relator was capable of sedentary work provided that he could sit or stand as needed.
 {¶ 21} 15. Relator's application for PTD compensation was heard before a staff hearing officer ("SHO") on December 7, 2006 and was denied. The SHO relied upon the medical reports of Drs. Flanagan and Murphy and concluded that relator could perform at a sedentary level provided that he had a sit/stand option. The SHO also referenced the February 2, 2006 FCE which was performed at the same facility where relator's treating physician practices. The SHO noted that the evaluator had concluded that relator could perform sedentary work. Thereafter, the SHO considered the nonmedical disability factors. The SHO concluded that relator's current age of 47 was a positive factor and that his education, while limited, was positive. The SHO noted that his limited education would preclude him from performing more complex job duties needed in semi-skilled or skilled jobs, but that relator's work history demonstrated that he was capable of performing semi-skilled employment. Thereafter, the SHO stated that "the injured worker's participation in vocational rehabilitation and job retraining is [a] factor to be considered in this permanent total disability determination." In this regard, the SHO noted that relator had been contacted in July 2004 regarding vocational rehabilitation. At that time, relator indicated that he had been employed by several different employers and that he had been self-employed. The SHO further noted that Dr. Mehta had referred relator to *Page 9 
vocational rehabilitation on May 3, 2005, but that referral had been rescinded. Thereafter, the SHO identified the correspondence from the case manager to Dr. Mehta from January 2006 and specifically noted that Dr. Mehta had indicated that she wanted a FCE to see if relator was objectively capable of gainful employment. The SHO noted that, despite the results of the evaluation, Dr. Mehta did not refer him for vocational rehabilitation. Ultimately, with regard to the issue of vocational retraining, the SHO concluded:
 The Hearing Officer finds, given the persuasive medical evidence, that the injured worker is capable of a broad range of sedentary work, that the injured worker's failure to explore or participate in vocational rehabilitation is a significant factor in this permanent total disability denial. The injured worker has not demonstrated that he is entitled to this benefit of last resort.
(Emphasis sic.)
 {¶ 22} Alternatively, the SHO noted further:
 * * * [T]he injured worker, at a minimum, could engage in entry-level sedentary work. Therefore, the injured worker is not found to be permanently and totally disabled.
 {¶ 23} 16. Relator filed a request for reconsideration on grounds that relator had never been released to enter into vocational rehabilitation. Relator's attorney referenced the 2004 report from Dr. Pinsky and stated that Dr. Pinsky specifically found that relator was not a candidate for vocational rehabilitation. After identifying that Dr. Pinsky was a commission specialist, counsel stated that relator was not eligible to be enrolled in vocational rehabilitation.
 {¶ 24} 17. By order mailed January 24, 2007, relator's request for reconsideration was denied.
 {¶ 25} 18. Thereafter, relator filed the instant mandamus action in this court. *Page 10 
Conclusions of Law: {¶ 26} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 27} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. State exrel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203. *Page 11 
 {¶ 28} In this mandamus action, relator contends that the commission abused its discretion by denying him PTD compensation on the basis that he failed to explore or participate in vocational rehabilitation. Relator argues that the evidence in the record demonstrates that he was not a candidate for vocational rehabilitation; therefore, it was improper for the commission to hold his failure to explore or participate in vocational rehabilitation against him. For the reasons that follow, this magistrate disagrees.
 {¶ 29} The arguments in relator's brief do not accurately reflect the evidence in the record. Specifically, relator argues that Dr. Pinsky, the state's doctor, opined that he was not a candidate for vocational rehabilitation. While that is a true statement, it is important to note that Dr. Pinsky's report was written in August 2004, before relator had his second back surgery. Dr. Pinsky further noted that, at that time, relator was not at MMI because he needed additional surgery. As such, it is immaterial that Dr. Pinsky indicated that relator was not a candidate for vocational rehabilitation in August 2004.
 {¶ 30} Furthermore, relator contends that his own doctor opined that he was not a candidate for vocational rehabilitation. However, a review of the evidence in the record seems to indicate otherwise. Specifically, on May 3, 2005, Dr. Mehta requested six weeks of vocational rehabilitation for relator. However, a letter dated May 5, 2005 addressed to relator from his case manager indicates that Dr. Mehta's request for vocational rehabilitation was rescinded only after relator spoke to Dr. Mehta and informed her that he did not feel physically capable of participating in vocational rehabilitation. Further, in January 2006, the case manager addressed the questionnaire to Dr. Mehta asking whether relator had a goal to return to work indicating that the May 2005 referral for vocational rehabilitation had been rescinded and inquiring whether Dr. Mehta was of *Page 12 
the opinion that relator could return to work at some level. In response, Dr. Mehta indicated that she wanted a FCE performed to determine whether or not relator was objectively capable of performing sustained remunerative employment. That FCE was performed in February 2006, and the physical therapist specifically determined that objectively, relator was capable of performing at a sedentary work level. In spite of these results, Dr. Mehta opined, on February 15, 2006, that due to his ongoing pain and limited education, relator was permanently and totally disabled.
 {¶ 31} The evidence in the record upon which the commission relied indicated that relator was capable of performing some sustained remunerative employment at a sedentary level. Further, it appears that it was relator who believed he was not a candidate for vocational rehabilitation, and not his treating physician. As such, the magistrate finds that it was not an abuse of discretion for the commission to find that relator's failure to explore or participate in vocational rehabilitation was a reason to deny him PTD compensation.
 {¶ 32} In the alternative, the commission denied relator's application after relying upon the medical reports of Drs. Flanagan and Murphy and after considering the nonmedical disability factors. The commission determined that, at a minimum, relator could engage in entry-level sedentary work. This was an alternative reason to deny him PTD compensation and, even if the evidence regarding vocational rehabilitation was construed otherwise, constituted a valid reason to deny his application.
 {¶ 33} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying his application for PTD compensation and this court should deny his request for a writ of mandamus.
 *Page 1